UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:     RUSSELL J. WILLIAMS and<br>            JOANN M. WILLIAMS,<br><br>            Debtors. | Case No. 06-32921-KRH<br>Chapter 13 |

## **MEMORANDUM OPINION**

This matter comes before the Court on the objection of Ford Motor Credit Company to the confirmation of the Debtors' Chapter 13 plan. For reasons outlined below, the objection will be overruled and the Debtors' Chapter 13 plan will be confirmed.

## FACTS

The Debtors purchased a 2002 Ford Mountaineer (the "Vehicle") from David Ford Lincoln Mercury. The installment contract of sale for the Vehicle was dated January 19, 2006, and was thereafter assigned to Ford Motor Credit Company ("Ford Motor Credit"). The parties do not dispute that Ford Motor Credit has a purchase money security interest in the Vehicle. The certificate of title for the Vehicle lists Ford Motor Credit as the first lienholder.

On October 20, 2006, the Debtors filed their Chapter 13 bankruptcy case in this Court. Ford Motor Credit filed a proof of claim in the case, asserting its security interest in the Vehicle and listing its claim at the time the Debtors filed their Chapter 13 case as $13,947.76. In their schedules and statement of affairs, the Debtors valued the Vehicle at $11,625.00.

The Debtors filed their first Chapter 13 plan on November 3, 2006, and Ford Motor Credit objected to confirmation because the plan did not propose to pay the entire amount of the

claim secured by the Vehicle.[1]  Ford Motor Credit claimed that § 1325(a)(5) of the Bankruptcy Code[2] required the Debtors to treat its claim as fully secured by the Vehicle.  It further argued that it was impermissible to separate its claim into secured and unsecured portions.  That objection was sustained.  On January 8, 2007, the Debtors filed an amended Chapter 13 plan (the "Amended Plan").

The Amended Plan provides that the Vehicle is to be surrendered in full satisfaction of the claim of Ford Motor Credit.  Ford Motor Credit has filed a timely objection to the confirmation of the Amended Plan, arguing that it is entitled to be deemed the holder of an unsecured deficiency claim for any amount of its claim that is not satisfied by the value of the surrendered Vehicle.  Hearing on the objection was held on April 25, 2007, at which time the Court took the matter under advisement.

CONCLUSIONS OF LAW

The Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and (L).  Resolution of this matter requires the Court to address the interaction between (i) the confirmation requirements of § 1325(a)(5) of the Bankruptcy Code,[3] (ii) the infamous "hanging paragraph" following § 1325(a), and (iii) § 506 of the Bankruptcy Code.[4]

---

[1]  That objection also dealt with the objection of Ford Motor Credit to another claim it has in the case, that claim being secured by a Ford Focus.

[2]  11 U.S.C.A. § 1325(a)(5).  The changes to the Bankruptcy Code affected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) [Pub. L. No. 109-8, 119 Stat. 23 (2005)] have not yet been codified into the official United States Code.  Since this opinion addresses primarily sections of the Bankruptcy Code affected by BAPCPA, all references to the Bankruptcy Code are to the United States Code Annotated 2004, as amended by West Supp. 2006.  The requirements of § 1325(a)(5) are discussed in the text accompanying and immediately following notes 3 and 4.

[3]  11 U.S.C.A. § 1325(a)(5).

[4]  11 U.S.C.A. § 506.

Section 1325 of the Bankruptcy Code outlines the requirements for confirmation of a Chapter 13 plan. Subparagraph (a)(5), at issue here, prescribes the treatment for each "allowed secured claim provided for by the plan:"

> (a) Except as provided in subsection (b), the court shall confirm a plan if -
> . . .
> (5) with respect to each allowed secured claim provided for by the plan –
> (A) the holder of such claim has accepted the plan;
> (B) (i) the plan provides that —
> (I) the holder of such claim retain the lien securing such claim until the earlier of –
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if –
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (C) the debtor surrenders the property securing such claim to such holder;

In a nutshell, § 1325(a)(5) provides that if a chapter 13 plan is to be confirmed, a debtor must either (i) comply with subparagraph (A) by obtaining the acceptance of the plan from each secured creditor, (ii) comply with subparagraph (C) by surrendering the secured creditor's collateral, or (iii) comply with the provisions of subparagraph (B), which comprise the bulk of § 1325(a)(5). In this case, the Debtors are proposing to surrender the collateral, thus complying with subparagraph (C).

3

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), the Debtors would have been required to determine the value of Ford Motor Credit's secured claim by applying the provisions of § 506 of the Bankruptcy Code. Section 506 governs to what extent an allowed claim is secured. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238-39 (1989) (Section 506 "governs the definition and treatment of secured claims, i.e., claims by creditors against the estate that are secured by a lien on property in which the estate has an interest."). Most relevant to this case, § 506 provides that an allowed claim is a secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C.A. § 506(a). Thus, a debtor would be able to bifurcate a creditor's claim into secured and unsecured portions, the amount of the secured portion being set as the value of the collateral and the amount of the unsecured portion being set as the amount by which the claim exceeds the value of the collateral. The unsecured portion of the claim would be paid pro-rata with the other general nonpriority unsecured creditors.

However, BAPCPA changed that practice with the addition of a section that has come to be known as the "hanging paragraph," so called because of its insertion into § 1325 immediately following subparagraph (a) but bearing no numbering of any type. The hanging paragraph provides that:

> [f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The hanging paragraph provides that if a creditor holds a purchase money security interest in a motor vehicle acquired for the debtor's personal use, and if the debt was incurred within the 910-day period prior to the bankruptcy filing,[5] the bifurcation of the debt into its secured and unsecured components under § 506 is no longer permissible. What the hanging paragraph does not say is how such a secured claim should be treated if it is not to be bifurcated. Interpretation of this aspect of the hanging paragraph has given rise to a multitude of litigation. Some courts have held that the hanging paragraph prohibits the treatment of the secured creditor's claim as fully secured,[6] while other courts have held that the hanging paragraph requires that secured claims be treated as fully secured.[7] The majority position, and the position

---

[5] For ease of reference, this opinion will hereinafter refer to creditors holding secured claims in vehicles described in the hanging paragraph as "910 creditors," to the claims of such creditors as "910 claims" and to the collateral securing such claims as "910 vehicles" or "910 collateral."

[6] *In re Wampler*, 345 B.R. 730, (Bankr. D. Kan. 2006); *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006); *In re Green*, 348 B.R. 601 (Bankr. M.D. Ga. 2006).

[7] Fourth Circuit
*In re Brooks*, 344 B.R. 417 (Bankr. E.D.N.C. 2006); *In re Shaw*, 341 B.R. 543 (Bankr. M.D.N.C. 2006); *In re Johnson*, 337 B.R. 269 (Bankr. M.D.N.C. 2006); *In re Turner*, 349 B.R. 437 (Bankr. D.S.C. 2006); *In re Phillips*, 362 B.R. 284 (Bankr. E.D. Va. 2007); *In re Ellegood*, 362 B.R. 696 (Bankr. E.D. Va. 2007).
  Other Circuits
*In re White*, 352 B.R. 633 (Bankr. E.D. La. 2006); *In re Bufford*, 343 B.R. 827 (Bankr. N.D. Tex. 2006); *In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006); *In re Montgomery*, 341 B.R. 843 (Bankr. E.D. Ky. 2006); *In re Duke*, 345 B.R. 806 (Bankr. W.D. Ky. 2006); *In re Soards*, 344 B.R. 829 (Bankr. W.D. Ky. 2006); *In re Evans*, 349 B.R. 498 (Bankr. E.D. Mich. 2006); *In re Vagi*, 351 B.R. 881 (Bankr. N.D. Ohio 2006); *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Gentry*, No. 06-50204, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006); *In re Bayless*, No. 06-31517, 2006 WL 2982101 (Bankr. E.D. Tenn. Oct. 18, 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *In re Long*, No. 06-30651, 2006 WL 2090246 (Bankr. E.D. Tenn. July 12, 2006); *In re Ross*, 355 B.R. 53 (Bankr. W.D. Tenn. 2006); *Dupaco Comm. Credit Union v. Zehrung (In re Zehrung)*; 351 B.R. 675 (Bankr. W.D. Wis. 2006); *In re Feddersen*, 355 B.R. 738 (Bankr. S.D. Ill. 2006); *In re Rowley*, 348 B.R. 479 (Bankr. S.D. Ill. 2006); *In re Posey*, No. 06-10011, 2006 WL 2711845 (Bankr. N.D. Ind. Sept. 21, 2006); *In re Turkowitch*, 355 B.R. 120 (Bankr. E.D. Wis. 2006); *In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006); *Capital One Auto Fin. v. Osborn (In re Osborn)*, 363 B.R. 72 (B.A.P. 8th Cir. 2007); *In re Scruggs*, 342 B.R. 571 (Bankr. E.D. Ark. 2006); *In re Fleming*, 339 B.R. 716 (Bankr. E.D. Mo. 2006); *In re Nicely*, 349 B.R. 600 (Bankr. W.D. Mo. 2006); *In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006); *In re Trejos*, 352 B.R. 249 (Bankr. D. Nev. 2006); *In re Henry*, 353 B.R. 261 (Bankr. D. Or. 2006); *In re Pool*, 351 B.R. 747 (Bankr. D. Or. 2006); *In re Lowder*, No. 05-44802, 2006 WL 1794737 (Bankr. D. Kan. June 28, 2006); *In re Vega*, 344 B.R. 616 (Bankr. D. Kan. 2006); *In re Curtis*, 345 B.R. 756 (Bankr. D. Utah 2006); *In re Montoya*, 341 B.R. 41 (Bankr. D. Utah 2006); *In re Wright*, 338 B.R. 917 (Bankr. M.D. Ala. 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Parish*, No. 05-BK-15702-JAF, 2006 WL 1679710 (Bankr. M.D. Fla. Mar. 10, 2006); *In re Brown*, 346 B.R. 868 (Bankr. N.D. Fla. 2006); *In re Murray*,

5

taken by all of the courts in this district that have had occasion to address the issue,[8] is that the effect of the hanging paragraph is to require that a 910 claim be treated as fully secured.[9]

This Court is in agreement with the majority view that the effect of the hanging paragraph is to require treatment of a 910 claim as fully secured. Accepting this premise, as it has been decided in the Eastern District of Virginia, the Court must now address the issue of whether a surrender of the collateral securing the 910 creditor's fully secured claim satisfies the secured claim and thus deprives the 910 creditor of any unsecured deficiency claim.

This District has had prior occasion to address the issue of the application of the "hanging paragraph" to 910 surrender cases. In his consideration of the issue, Judge Adams introduced the controversy succinctly:

> At first blush, it would seem simple to apply the language of the hanging paragraph and exclude the application of § 506 to all 910 claims regardless of how they were treated in the plan. That is, after all, what it says. However, application of the statute has not proven quite so simple and numerous courts have had to address the very question we are faced with here. . . . The answer is based on statutory interpretation, but as might be expected, not everyone is in agreement as to the outcome.

*In re Kenney*, No. 06-71975-A, 2007 WL 1412921, at *4 (Bankr. E.D. Va. May 10, 2007). In *Kenney*, the Court found that the minority position is that the 910 creditor is entitled to assert an unsecured deficiency claim[10] and that the majority position is that surrender of the 910 collateral

---

352 B.R. 340 (Bankr. M.D. Ga. 2006); *Triad Fin. Corp. v. Brown (In re Brown)*, 346 B.R. 246 (Bankr. M.D. Ga. 2006); *DaimlerChrysler Fin. Servs. Ams. LLC v. Brown (In re Brown)*, 339 B.R. 818 (Bankr. S.D. Ga. 2006).

[8] *In re Lorenz*, No. 06-71881-A, 2007 WL 1189608 (Bankr. E.D. Va. Apr. 19, 2007); *In re Ellegood*, 362 B.R. 696 (Bankr. E.D. Va. 2007); *In re Phillips*, 362 B.R. 284 (Bankr. E.D. Va. 2007).

[9] In reaching the determination that the hanging paragraph requires the treatment of the 910 claim as fully secured, Judge Markell remarked that "[i]t is undisputed that the hanging paragraph is poorly drafted. But the fact that an expert, trained in both drafting and bankruptcy, would have written the statute differently is not sufficient reason to exclude an interpretation that would have resulted from that better drafting." *In re Trejos*, 352 B.R. 249, 261 (Bankr. D. Nev. 2006).

[10] A recent survey of cases includes *In re Clark*, 363 B.R. 492 (Bankr. N.D. Miss. 2007); *In re Zehrung*, 351 B.R. 675 (Bankr. W.D. Wis. 2006); *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006); *In re Duke*, 345 B.R. 806

6

terminates the rights of the 910 creditor to assert an unsecured deficiency claim.[11] *Id.* at *4-6. *Kenney* followed the majority and concluded that § 506 is not available to allow bifurcation of the 910 creditor's claim when the debtor surrenders the collateral through a Chapter 13 plan.

That same issue is presently before this Court -- whether the hanging paragraph's exclusion of the application of § 506 applies to subpart (C) of § 1325(a)(5) as well as to subpart (B) of that same section. Is the surrender of the collateral all that is required to gain confirmation of a Chapter 13 plan over the objection of a 910 creditor? Facially, the answer would appear to be in the affirmative, as the hanging paragraph applies to the entirety of § 1325(a)(5) and not just to subpart (B). The same language cannot mean one thing when applied to § 1325(a)(5)(B) and something different when applied to § 1325(a)(5)(C). This Court agrees with the analysis and holding of Judge Adams in *In re Kenney* that the exclusion of § 506 from the calculus prohibits bifurcation of the secured creditor's claim under both subparagraphs.

The Bankruptcy Appellate Panel for the Tenth Circuit has described the function of the hanging paragraph as the imposition of a legal fiction:

---

(Bankr. W.D. Ky. 2006); *In re Hoffman*, 359 B.R. 163 (Bankr. E.D. Mich. 2006); *In re Blanco*, 363 B.R. 896 (Bankr. N.D. Ill. 2007); and *In re Morales*, 359 B.R. 211 (Bankr. N.D. Ill. 2007) in the minority position.

[11] A recent survey of cases includes *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007); *In re Evans*, 349 B.R. 498, (Bankr. E.D. Mich. 2006); *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Gable*, No. 06-32820, 2007 WL 708573 (Bankr. E.D. Tenn. Mar. 5, 2007); *In re Harrell*, No. 06-32661, 2007 WL 708569 (Bankr. E.D. Tenn. Mar. 5, 2007); *In re Rice*, No. 06-32334, 2007 WL 541809 (Bankr. E.D. Tenn. Feb. 16, 2007); *In re Keck*, No. 06-32392, 2007 WL 470349 (Bankr. E.D. Tenn. Feb. 9, 2007); *In re Steakley*, 360 B.R. 769 (Bankr. E.D. Tenn. 2007); *In re Gentry*, No. 06-50204, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006); *In re Bayless*, No. 06-31517, 2006 WL 2982101 (Bankr. E.D. Tenn. Oct. 18, 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *In re Long*, No. 06-30651, 2006 WL 2090246 (Bankr. E.D. Tenn. July 12, 2006); *In re Feddersen*, 355 B.R. 738 (Bankr. S.D. Ill. 2006); *In re Turkowitch*, 355 B.R. 120 (Bankr. E.D. Wis. 2006); *In re Osborn*, 363 B.R. 72 (B.A.P. 8th Cir. 2007); *In re Nicely*, 349 B.R. 600 (Bankr. W.D. Mo. 2006); *In re Pool*, 351 B.R. 747 (Bankr. D. Or. 2006); *In re Quick*, No. NO-07-025, 2007 WL 1941749 (B.A.P. 8th Cir. July 5, 2007); *In re Durham*, 361 B.R. 206 (Bankr. D. Utah 2006); *In re Moon*, 359 B.R. 329 (Bankr. N.D. Ala. 2007) (agreeing with the reasoning in *Gentry* and *Ezell*, and concluding that the hanging paragraph following § 1325(a) applies to both § 1325(a)(5)(B) and § 1325(a)(5)(C)); *In re Brown*, 346 B.R. 868 (Bankr. N.D. Fla. 2006); *In re Press*, No. 06-10978 BKC JKO, 2006 WL 2734335 (Bankr. S.D. Fla. July 26, 2006); *Capital One Auto Fin. v. Bivins (In re Bivins)*, No. 06-51778 RFH, 2007 WL 624385 (Bankr. M.D. Ga. Feb. 23, 2007) in the majority position.

> The effect of the hanging paragraph is that a debtor no longer has this bifurcation tool at his or her disposal. If a creditor files a secured claim relating to 910 property and that claim is allowed under § 502, the debtor must treat the claim as fully secured. In a sense, a fiction arises that the 910 collateral is worth the exact amount of the proof of claim. So when a debtor proposes to retain the collateral, the debtor must propose to pay the entire claim as filed. Likewise, where the debtor proposes to surrender the collateral, the fiction created by the hanging paragraph serves to render the secured claim completely satisfied.

*DaimlerChrysler Fin. Servs. Ams. LLC v. Quick (In re Quick)*, No. NO-07-025, 2007 WL 1941749 (B.A.P. 10th Cir. July 5, 2007).

The concern raised by Ford Motor Credit centers around its assertion that when the statute is applied exactly as written to debtors who desire to surrender a 910 vehicle, 910 creditors will generally be deprived of the benefits that Ford Motor Credit argues they were given by BAPCPA's amendments to § 1325. If the debtor were to propose to retain the 910 vehicle and to pay the 910 creditor's claim through a Chapter 13 plan, § 1325 now requires that the entire 910 claim be deemed secured. Thus, the 910 creditor must be paid the entire amount of its claim through the Chapter 13 plan. However, if the debtor surrenders the 910 vehicle in full satisfaction of the claim, the 910 creditor can anticipate receiving less than the full amount of its claim, because the value of a 910 vehicle is almost always less than the amount of the 910 claim. Any deficiency will be eliminated by § 1325's provision that § 506 will not apply to 910 claims.

Further, Ford Motor Credit points out that if a 910 creditor accomplishes a complete liquidation of the 910 collateral prior to the filing of the bankruptcy, it will be able to assert an unsecured deficiency claim in a subsequent Chapter 13 bankruptcy. Only if the 910 collateral is surrendered in a Chapter 13 case will the 910 creditor be limited to a recovery no more than the value of the collateral.

8

In light of these seemingly inconsistent results, Ford Motor Credit argues that § 1325's exclusion of the provisions of § 506 must not be applied to § 1325(a)(5)(C), the surrender of collateral portion of § 1325, based on the inequities it perceives in the application of the hanging paragraph to § 1325(a)(5)(C). The crux of Ford Motor Credit's argument is that § 1325 was amended to protect the interests of the 910 creditor and thus the statute should be interpreted to give the interests of the secured 910 creditor increased protection. Ford Motor Credit is in essence requesting the Court to find that the statute on its face is contrary to the intent of the drafters.

In construing the hanging paragraph, the standard to be applied is that set forth by the Supreme Court in *Caminetti v. United States*, 242 U.S. 470, 485 (1917) and applied by the Fourth Circuit in *Hillman v. Internal Revenue Service*, 263 F.3d 338, 342 (2001). That standard, known as the Plain Meaning Rule, is that "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Id.*

The Fourth Circuit has cautioned that "when the terms of a statute are clear, its language is conclusive and courts are not free to replace that. . . [clear language] with an unenacted legislative intent." *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988) (citation omitted). Rather, the courts must apply that language as written. Otherwise, the courts would, in effect, be amending the statute and usurping the function of the legislature. The Supreme Court, in addressing the interpretation of § 506 pre-BAPCPA, remarked that "[i]n any event, we do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome . . . is a task for Congress, not the courts." *Hartford Underwriters Ins. Co. v*

9

*Union Planters Bank*, 530 U.S. 1, 13-14 (2000) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998)).

With respect to the hanging paragraph, the plain meaning of the statute is that surrender of 910 collateral deprives the 910 creditor of the bifurcation provided for in § 506. The Court is of the opinion that if Congress had intended for the provisions of the hanging paragraph not to apply to subparagraph (C) of § 1325(a)(5), it would have simply limited application of the hanging paragraph to subparagraph (B) of § 1325(a)(5). Instead, the plain language of the statute makes the hanging paragraph equally applicable to all of the subparagraphs of § 1325(a)(5).

There are only two exceptions to the Plain Meaning Rule. They are set forth in the Fourth Circuit's decision in *RCI Technology Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 265 (4th Cir. 2004):

> **The first such exception**, premised on absurdity, exists "when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense. . . ." **The second exception** is premised on legislative intent, and it exists only "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent. . . ." A reviewing court may look beyond the plain language of an unambiguous statute only when one of these exceptions is implicated. And we have recognized that "the instances in which either of these exceptions to the Plain Meaning Rule apply 'are, and should be, exceptionally rare.'"

*Id*. (citations omitted) (emphasis added).

This Court recognizes that the result obtained by the application of the plain meaning of § 1325 may sometimes be puzzling or perhaps unsettling to creditors, but that result is far from absurd. The Fourth Circuit has gone so far as to say that a result may be unreasonable or even quite unreasonable and still not reach the level of "absurd." *Sunterra* at 268. Further, in *Sigmon Coal Co. v. Apfel,* the Fourth Circuit set forth its philosophy on when a court may find a result absurd:

10

> But, even if . . . the literal text of the statute produces a result that is, arguably, somewhat anomalous—we are not simply free to ignore unambiguous language because we can imagine a preferable version. *See United States v. Sheek*, 990 F.2d 150, 153 (4th Cir.1993) ("Even if the result appears to be anomalous or absurd in a particular case, the court may not disregard unambiguous language."). . . . For us to read into the statute language that is simply not there would require us to believe that the text as Congress drafted it produced an absurdity "so gross as to shock the general moral or common sense." *Maryland State Dep't of Educ.*, 98 F.3d at 169 (quoting *Crooks*, 282 U.S. at 59-60, 51 S.Ct. 49). . . .
>
> What we are being asked to do is improve the statute--to amend it, really. The Commissioner's reading of the statute may be appealing in terms of its logic, but we cannot adopt it as our own without trespassing on a function reserved for the legislative branch:
>
> [I]f Congress did not say what may appear more reasonable, and said something else, a court may not step in and perform a congressional, i.e., legislative, act. . . .
>
> We must interpret statutes as written, not as we may wish for them to be written. Congress' role is to enact statutes; the judiciary's to interpret those statutes as written.
>
> [O]ur job is to determine the meaning of the statute passed by Congress, not whether wisdom or logic suggests that Congress could have done better. . . .

*Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000) (some citations omitted).

In light of the Fourth Circuit's reluctance to disregard the unambiguous language of the statute, and its suggestion in *Sigmon* that even an absurd result may not suffice as a reason to look beyond that unambiguous language,[12] this Court cannot substitute its own judgment, opinion, construction or inclination for that of the clear language of the statute.

This discussion of the absurd result exception to the Plain Meaning Rule also indisputably calls for the conclusion that the statute is not ambiguous and it does not conflict with the intent of the drafters. No clear Congressional intent can be gleaned from the legislative history. The title of the revisionary statute, the Bankruptcy Abuse Prevention and Consumer

---

[12] The Court notes, however, that the *Sigmon* decision was rendered prior to the Fourth Circuit's *Sunterra* decision.

11

Protection Act, does not suggest that the Congress clearly meant to benefit 910 creditors by excluding the application of § 506 to 910 claims. Because the statute is both an "abuse prevention" and a "consumer protection" act, and because the legislative history is sparse and unenlightening, the Court cannot state with certainty that the application of the statute as it is written is contrary to the intent of the drafters. There is no "clearly expressed congressional intent."[13]

Application of the plain language of the statute does not lead to results that invalidate any section of the Bankruptcy Code, nor does such an application render any section meaningless or in fundamental conflict with another section of the Code. There is nothing to lead this Court to believe that the legislature clearly intended a result other than an application of the statute as written. If in fact this result is not what the legislature intended, it is up to the legislature to change it; it is not the job of this Court. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989).[14] Accordingly, neither of the two exceptions to the Plain Meaning Rule is applicable in this case.

Ford Motor Credit argues next that nothing in the plain language of the hanging paragraph of § 1325(a) requires a change in the way that § 506 was applied to allowed secured claims prior to BAPCPA. It argues that pre-BAPCPA, § 506 had no application to the surrender of collateral. Rather it asserts that § 506 was applied only when collateral was retained. Citing *Butner v. United States*, 440 U.S. 48, 55 (1979), Ford Motor Credit argues that Virginia law, which would preserve a deficiency claim upon the sale of the collateral, should be applied to determine its rights. It argues that state law, not § 506, allows for the bifurcation of its claim into

---

[13] Courts are required to implement the language of the statute and not what they think Congress might have intended instead. 8 Collier on Bankruptcy ¶ 1325.06[1][a] at 1325-28 to 1325-29 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006) (citations omitted).

[14] "[This] may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court." 492 U.S. at 249.

secured and unsecured portions in the bankruptcy context. It asserts that the elimination of the § 506 bifurcation process, therefore, has no effect in the surrender of collateral context. Using that analysis, it argues that an unsecured portion of its claim would remain after the surrender of the Vehicle and that the Debtors' Chapter 13 plan must provide for appropriate payment of that claim.

The argument that pre-BAPCPA § 506(a) had no application to surrender under § 1325(a)(5)(C) is misplaced. Rejecting this argument, the court, in *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), stated:

> [v]aluation of a creditor's allowed secured claim under Pre-BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed disposition or use of such property. . . ." 11 U.S.C.A. § 506(a) (2004). Upon surrender under Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown[15] purposes under Pre-BAPCPA § 1325(a)(5)(B), replacement value was the criteria. *See Assoc. Commercial Corp. v. Rash*, 520 U.S. 953 (1997).

*Id*. at 339-40. An allowed unsecured claim arises, not as a consequence of a sale of the collateral pursuant to state law, but as a result of determining the extent by which the debt exceeds the value of the collateral through the application of § 506, whether that determination be by estimation for use under § 1325(a)(5)(B) or by surrender and eventual liquidation under § 1325(a)(5)(C). *In re Osborn*, 363 B.R. 72, 77 (B.A.P. 8th Cir. 2007).

The allowance of Ford Motor Credit's claim is a matter of federal bankruptcy law, not state law. Section 501 of the Bankruptcy Code[16] provides for the filing of proofs of claim in a

---

[15] A plan may be confirmed over the objections of claim holders if it satisfies the provisions set forth in § 1325. This is commonly referred to as a plan "cramdown." "Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim. . . and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997).

[16] 11 U.S.C.A. § 501.

bankruptcy case. Section 502 of the Bankruptcy Code[17] and Bankruptcy Rule 3001(f)[18] govern the allowance of such claims. Section 502(b) provides that if an objection is made to a claim, the court must determine the amount of the claim "as of the date of the filing of the petition," not as of the date the collateral is sold.[19] Therefore, on the petition date, a 910 creditor holds only one claim – a secured claim. Section 506(a) provides the basis for bifurcating the claim into its secured and unsecured components. BAPCPA's removal of § 506 from § 1325(a)(5) simply eliminates the creditor's ability to bifurcate the claim. It does not alter the creditor's position as a secured creditor. Rather, Congress has deemed the creditor to be fully secured for the amount of the debt notwithstanding the actual value of the collateral.[20]

Similarly, In *Kenney,* Judge Adams rejected the argument that § 506 has no application to the surrender of collateral. Citing *In re Ellegood*, Judge Adams pointed out that the argument that state law must govern is fatally flawed because it ignores the fact that while state law may determine whether a claim is secured, bankruptcy law determines the value of the secured claim. 2007 WL 1412921, at *9. Judge Adams held that:

> [s]ection 506 is the mechanism for determining such value and Congress is within its right to remove certain claims, such as 910 claims, from its purview. It is important to remember that state law only controls in bankruptcy when it has not been modified by the Bankruptcy Code. In the instant case, remedies available under state law would be utilized to liquidate the collateral and then the amount obtained subtracted from the contract amount due to obtain a deficiency amount,

---

[17] 11 U.S.C.A. § 502.

[18] Fed. R. Bankr. P. 3001(f).

[19] Section 1305 of the Bankruptcy Code, 11 U.S.C.A. § 1305, permits the filing and allowance of postpetition claims in limited circumstances, none of which are applicable to the unsecured deficiency claim Ford Motor Credit seeks to assert here. In the case at bar, the claim may not be allowed unless it was a consumer debt (i) that arose *after* the date of the order for relief for property and (ii) that was *necessary* for the Debtors' performance under the plan. 11 U.S.C.A. § 1305(a)(2). Neither of these elements is satisfied.

[20] Consistent with this analysis, Ford Motor Credit filed a single proof of claim on December 12, 2006, in which it asserted that it held a secured claim in the amount of $13,947.76 that was secured by collateral with a value of $13,947.76.

14

>but for the valuation process provided for in § 506. Congress is within its rights to prohibit the bifurcation of claims in bankruptcy typically allowed for in § 506 as it sees fit.

*Id*. (citation omitted).

Nor does Ford Motor Credit's reliance on *Butner v. United States*, appear to be well founded.[21] *Butner* was a case requiring the bankruptcy court to determine whether the creditor's security interest in real property extended to rents and profits derived from the property. The Supreme Court noted that:

>[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

440 U.S. at 55 (citing *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961).

But, unlike *Butner*, the question here is not what property rights Ford Motor Credit has in the collateral. Rather, it is whether its contractual right to payment may be impaired. Section 1322 of the Bankruptcy Code expressly provides that it may.[22] When a conflict exists between state law and bankruptcy laws enacted by Congress, the state law is superseded. *Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 600 (B.A.P. 6th Cir. 2006). "The Bankruptcy Code is federal law that preempts state law where such laws conflict. Creditors' rights are curtailed in many ways once a debtor files bankruptcy due to the Bankruptcy Code's provisions regarding the

---

[21] The Seventh Circuit recently addressed the surrender of collateral issue in *In re Wright*, No. NO-07-1483, 2007 WL 1892502 (7th Cir. July 3, 2007), holding that confirmation of a debtor's Chapter 13 plan proposing surrender of 910 collateral did not extinguish the 910 creditor's right to an unsecured deficiency. It based that conclusion on its interpretation of *Butner v. United States* as holding that in the absence of a federal rule, state law determines rights and obligations.

[22] Section 1322 provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C.A. § 1322.

15

automatic stay, discharge, and distribution of non-exempt assets, for example . . . [and] there is nothing inappropriate about bankruptcy laws affecting a creditor's rights to recover under state law." *In re Brown*, 346 B.R. 868, 876 (Bankr. N.D. Fla. 2006) (citation omitted). The elimination of an unsecured deficiency amount is a contractual impairment that the Bankrupty Code has long been construed to authorize. *DaimlerChrysler Fin. Servs. v. Quick*, 2007 WL 1941749, at *3.[23] Thus, *Butner* does not necessarily support Ford Motor Credit's claim to a contractual right to a deficiency claim.

This Court agrees with the opinion of Judge Adams in *Kenney* and with the recent opinion of the Tenth Circuit Bankruptcy Appellate Panel in *DaimlerChrysler Financial Services v. Quick* that Congress may in fact permissibly prohibit the bifurcation of claims. "[W]hen the creditor files its claim as secured, the [Hanging] Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons other than collateral value,[24] the creditor's allowed secured claim is fixed at the amount at which the claim is filed." *Ezell*, 338 B.R. at 340. Allowing a creditor to surrender collateral and then use state law to pursue a deficiency claim would effectively bifurcate the secured creditor's claim, in contravention of the plain meaning and spirit of the hanging paragraph. *In re Evans*, 349 B.R. 498, 501 (Bankr. E.D. Mich. 2006).

In light of the above, this Court cannot depart from the terms of the statute as written. Accordingly, the surrender of the 910 collateral in a Chapter 13 plan will satisfy the claim of the

---

[23] An argument occasionally made by 910 creditors is that the elimination of the deficiency claim is an unconstitutional taking, prohibited by the Fifth Amendment. This argument was addressed by the Bankruptcy Appellate Panel of the Tenth Circuit in the recent case of *DaimlerChrysler Fin. Servs. v. Quick*, 2007 WL 1941749. The court in *Quick* distinguished between the property right in the collateral and the contractual right to payment, noting that the elimination of the unsecured deficiency was a contractual impairment that "[b]ankruptcy laws have long been construed to authorize." *Id*. at *3.

[24] For example, a claim may be bifurcated into "910 claim" and "non-910 claim" portions, if the entire amount of the creditor's claim is not secured by a purchase money security interest. *See, e.g., In re Pajot*, No. 06-31446-DOT, slip op. (Bankr. E.D. Va. July 17, 2007).

16

910 creditor in full and will not result in an unsecured deficiency claim. The objection to confirmation lodged by Ford Motor Credit will therefore be overruled.

Entered: _____

                                                  /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Russell Joseph Williams
Joann Marie Williams
403 Battery Ave
Emporia, VA  23847

Julia Bonham Adair
Laura Taylor Alridge
John Russell Bollinger
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA  23230-1588

Carl A. Eason, Esquire
Steven L. Brown, Esquire
Wolcott Rivers Gates
One Columbus Center, Suite 1100
Virginia Beach, VA  23462-1100

Robert E. Hyman
P.O. Box 1780
Richmond, VA  23218-1780

Robert B. Van Arsdale
Assistant U. S. Trustee
600 East Main Street, Suite 301
Richmond, VA  23219